**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT WALDAU,**

                **Plaintiff,**                        **5:11-cv-925
                                                                      (GLS)**

                v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Olinsky Law Group<br>300 S. State Street<br>5th Floor, Suite 520<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ.<br>KAREN S. SOUTHWICK, ESQ |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | VERNON NORWOOD<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Robert Waldau challenges the Commissioner of Social Security's denial of Supplemental Security Income ("SSI"), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Waldau's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On April 7, 2009, Waldau filed an application for SSI under the Social Security Act ("the Act"), alleging disability since December 21, 2005. (*See* Tr.[1] at 96, 162-64.) After his application was denied, (*see id.* at 100-07), Waldau requested a hearing before an Administrative Law Judge (ALJ), which was held on August 25, 2010. (*See id.* at 37-77, 108.) At the close of the hearing, the ALJ requested that Waldau attend an additional consultative examination in order to further develop the record, which he did attend. (*See id.* at 73-74, 311-15.) Thereafter, a second administrative hearing was held. (*See id.* at 78-95.) On March 25, 2011, the ALJ issued

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

2

an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-11, 19-36.)

Waldau commenced the present action by filing his Complaint on August 4, 2011 wherein he sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 11, 13.)

### III. **Contentions**

Waldau contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 11 at 5-18.) Specifically, Waldau claims that the: (1) ALJ's step two determination is infirm as he failed to find that certain of Waldau's impairments are severe; (2) residual functional capacity (RFC) determination is not supported by substantial evidence and is the product of legal error; (3) ALJ failed to apply the appropriate legal standards in assessing his credibility; and (4) hypothetical question posed to the vocational expert (VE) was incomplete. (*Id.*) The Commissioner counters that the appropriate legal

standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 13 at 11-24 .)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 11 at 2-5; Dkt. No. 13 at 2-7.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Step Two Evaluation

Waldau claims the ALJ erred by failing to find his right shoulder impairments and the progressive nuclear sclerosis in his left eye severe.

---

[2] Specific reference to 42 U.S.C. § 1383(c)(3) is unnecessary because judicial review under that section is identical to review under section 405(g).

4

(*See* Dkt. No. 11 at 6-8.) The court disagrees.

At step two of the sequential analysis, the ALJ must "determine whether the claimant has a severe impairment." *Christiana*, 2008 WL 759076, at *3; *see* 20 C.F.R. § 416.920(a)(4)(ii), (c). A "severe impairment" is "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "[c]apacities for seeing, hearing, and speaking." 20 C.F.R. § 416.921(b)(1)-(2). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). Indeed, when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities," a finding of "not severe" is warranted. SSR 85-28, 1985 WL 56856, at *3 (1985); *see* 20 C.F.R. § 416.921(a). Notably, the omission of

an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in his residual functional capacity (RFC) determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77, 2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

Here, the ALJ found that Waldau suffered from the following severe impairments: traumatic blindness of the right eye, degenerative changes of the cervical spine, and soft tissue impairment of the *left* shoulder. (*See* Tr. at 25.) While Waldau alleges that the ALJ failed to find his *right* shoulder impairments severe, the ALJ's RFC determination clearly states that he is limited in the use of his *right*, but not *left*, upper extremity. (*See id.* at 26-27.) Thus, the court concludes that the ALJ found Waldau's right shoulder impairment to be severe and the reference to his left shoulder impairment an inadvertent typographical error. Further, while the ALJ's step two determination does not mention progressive nuclear sclerosis of the left eye, he explained that he did not find Waldau's other alleged impairments, including bilateral eye pain, to be severe as they did not limit his ability to perform basic work activities, evidenced by the fact that Waldau failed to

6

seek treatment for such impairments subsequent to his alleged onset date. (*See id.* at 25.) In any event, during the subsequent RFC determination, the ALJ discussed the results of the consultative ophthalmological examination of Waldau's left eye. (*See id.* at 27.) As the ALJ proceeded with the disability analysis and included Waldau's severe and non-severe impairments in the RFC determination, there is no basis to remand this matter based upon the ALJ's step two analysis. *See Tryon*, 2012 WL 398952, at *4.

## B. RFC Determination

Waldau further claims that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error. (*See* Dkt. No. 11 at 9-14.) According to Waldau, the ALJ erred in affording "little weight" to the opinion of his treating physician, Michael S. Potter, and "considerable weight" to the opinion of consultative examiner Kalyani Ganesh. (*Id.*) In addition, Waldau argues that the ALJ erred in failing to re-contact Dr. Auston for clarification prior to discounting his opinion. (*See id.* at 12.) The Commissioner counters, and the court agrees, that the ALJ's RFC determination is supported by substantial evidence. (*See* Dkt. No. 13 at 13-18.)

7

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Dr. Ganesh opined that Waldau experienced a "[m]ild to moderate limitation lifting, carrying, and pulling." (*See* Tr. at 271.) On the other hand, Waldau's treating physician, opined that, among other limitations, Waldau could only occasionally lift and carry ten pounds and rarely twenty pounds, could occasionally grasp, turn, and twist objects and rarely reach. (*See id.* at 327.) Further, Dr. Potter reported that Waldau could only sit for fifteen minutes at a time and up to four hours in an

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

8

eight-hour work day, and could only stand for fifteen minutes at a time and less than two hours total in an eight-hour work day. (*See id.* at 326.) Affording "little weight" to the opinion of Dr. Potter but "considerable weight" to the opinion of Dr. Ganesh, the ALJ determined that Waldau had no limitations with respect to sitting, standing, walking or in the full use of his left upper extremity, but could only push, pull, lift, and carry up to twenty pounds occasionally and ten pounds frequently with his right arm and hand. (Tr. at 26, 28.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a

whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c). Notably, "'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)). Accordingly, "while an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Id.* (internal quotation marks and citation omitted).

Here, the ALJ considered the relevant factors and properly explained his reasoning for discounting the weight given to Dr. Potter's opinion. Specifically, the ALJ explained that Dr. Potter's treating relationship with Waldau was brief as he had only begun treating Waldau three months prior to completing his medical source statement. (*See* Tr. at 29, 326.) Further, Dr. Potter did not offer any medical signs or laboratory findings to support his opinion, but rather only completed a fill-in-the-blank medical source statement, which is "marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran*, 362 F.3d at 31 n.2; *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form

reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.") In addition, the ALJ considered the fact that Dr. Potter's opinion was not consistent with the other evidence of record, including the lack of any evidence in the record of an impairment to Waldau's back and his failure to complain of back pain during previous examinations. (*See id.* at 29, 257-60, 269-71, 326.)

Further, although Waldau correctly points out that a consultative examiner's report which concludes that a claimant's condition is "mild" or "moderate" without additional information does not allow an ALJ to infer that a claimant is capable of performing the exertional requirements of work, *see Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20 C.F.R. § 416.960(c)(2), Dr Ganesh's ultimate diagnosis is well supported by his extensive examination and is not in any way conclusory. *See Armstrong v. Comm'r of Soc. Sec.*, No. 05-CV-1285, 2008 WL 2224943, at *4, n.6 (N.D.N.Y. May 27, 2008). Indeed, Dr. Ganesh noted that Waldau had full range of motion in his shoulders, elbows, forearms, and fingers bilaterally. (*See* Tr. at 270.) Dr. Ganesh also found Waldau to have a full range of motion and 5/5 muscle strength in his left wrist but a limited range of motion and some weakness in his

11

right wrist. (*See id.* at 270-71.) According to Dr. Ganesh, Waldau's hand and finger dexterity were intact and his grip strength was 5/5 bilaterally. (*See id.* at 270.) Finally, Dr. Ganesh noted that Waldau's gait and stance were normal, he could walk on his heels and toes without difficulty, and he had full muscle strength and range of motion in his lower extremities and cervical spine. (*See id.* at 270-71.)

In light of the above medical evidence, and keeping in mind that "'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment,'" *Walker v. Astrue*, No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (quoting *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)), the court finds that the ALJ's RFC determination is supported by substantial evidence. Although Waldau argues that the ALJ should have re-contacted both Dr. Potter and Dr. Auston, who completed a form excusing Waldau from work for a period of two months due to "shoulder/neck weakness/pain," (Tr. at 325), where there are no obvious gaps, and the record presents "a 'complete medical history,'" the ALJ is under no duty to seek additional information before rejecting a claim. *Rosa*

12

*v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).  Here, the court is satisfied that further development of the record was unnecessary as the ALJ had before him substantial evidence that enabled him to render a decision.  *See* 20 C.F.R. § 416.920b(b) (providing that, even if the record evidence is inconsistent, further record development is not required if, after weighing all the evidence, a disability determination can be made).

## C. <u>Credibility</u>

Next, Waldau contends that the ALJ's assessment of his credibility was legally flawed and is factually unsupported.  (*See* Dkt. No. 11 at 14-17.)  The Commissioner counters that the ALJ's credibility finding was legally sound and is supported by substantial evidence.  (*See* Dkt. No. 13 at 18-22.)  The court agrees with the Commissioner in this regard as well.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility

13

inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency, and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

      The ALJ found that Waldau's subjective complaints were not credible to the extent that they were inconsistent with his RFC determination. (*See* Tr. at 28.) Waldau argues that the ALJ impermissibly determined his RFC first, and then used that RFC to evaluate the consistency of his subjective complaints. (*See* Dkt. No. 11 at 14-15.) It is clear, however, that the ALJ undertook a detailed credibility analysis, and that his reference to consistency with the RFC to which Waldau objects was merely an

14

indication that the RFC incorporated those findings. (*See* Tr. at 27-29.) Contrary to Waldau's contentions, the ALJ engaged in a detailed review of the entire case record, including consideration of objective medical evidence and the factors set forth in 20 C.F.R. § 416.929(c). (*See id.*)

Waldau also makes specific objections to certain factors considered, or omitted, in the ALJ's credibility analysis. (*See* Dkt. No. 11 at 15-17.) These contentions are also meritless. First, contrary to his contentions, the ALJ considered Waldau's alleged limitations on his ability to perform activities of daily living. (*See* Tr. at 27.) The ALJ also considered the activities of daily living that Waldau reported performing to the various examining medical sources. (*See id.* at 28, 266, 270, 312.) Further, Waldau's contention that the ALJ erred in considering his criminal history as one of many factors in evaluating his credibility is without merit. *See Arrington v. Astrue*, No. 09-CV-870, 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011); *Rutkowski v. Astrue* , No. 8:07-CV-916, 2009 WL 2227282, at *16 (N.D.N.Y. July 23, 2009). Finally, although Waldau takes issue with the ALJ's characterization of his use of a chainsaw in October 2008— almost three years after his alleged disability onset date—as part of a "logging operation," he does not dispute the fact that at that time he used a

15

chainsaw "to cut firewood."[4]  (Dkt. No. 11 at 16-17; *see* Tr. at 28.)

In sum, the ALJ's thorough credibility analysis was legally proper and is supported by substantial evidence.  It will, therefore, not be disturbed.

**D.     Vocational Expert**

Waldau's final argument—that the VE's testimony was unreliable because it was based on an "incomplete hypothetical question"—relies entirely on his claim that the ALJ's assessment at steps two and four were erroneous.  (Dkt. No. 11 at 17-18.)  However, as the court has already found otherwise, it suffices to say that Waldau's argument is untenable.  As such, the ALJ's use of a VE was appropriate, as the hypothetical posed was supported by the record.  (*See* Tr. at 26, 30, 86-88.)

**E.     Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

---

[4] The ALJ's reference to "logging operations" appears to come from emergency room medical records which state that Waldau's neck pain arose from a "logging accident."  (Tr. at 28, 257.)

Waldau's Complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 21, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court